The CITY OF GALVESTON, Appellant,

v.

FLAGSHIP HOTEL, LTD., Appellee.

No. 01–01–00448–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 14, 2002.

William S. Helfand, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenbery, Helfand, Houston, for appellant.

J. Michael Fieglein, Law Office of J. Michael Fieglein, Galveston, Lee M. Larkin, Dobrowski & Associates, L.L.P., Houston, for appellee.

Panel consists of Justices WILSON, JENNINGS, and DUGGAN.*

## OPINION

TERRY JENNINGS, Justice.

In this accelerated case, the City of Galveston appeals from the trial court's grant of a temporary injunction in favor of Flagship Hotel, Ltd. ("Flagship"). The City raises two issues on appeal: (1) whether the trial court lacked jurisdiction to grant an injunction on this matter; and (2) whether the hotel met its burden of proof sufficient to justify the trial court's grant of a temporary injunction.

We vacate the temporary injunction granted by the trial court.

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas

### Factual and Procedural Background

The City of Galveston owns the premises known as the Galveston Marine Park and Pier, which includes the Flagship Hotel. In September 1998, Flagship, the lessee of the premises and operator of the hotel, sued the City for breach of the parties' lease agreement. One of several claims raised by Flagship is that the City improperly made demand for payment of $196,291.15 for municipal water service provided to the hotel between May 1990 and November 1995. Flagship argues the disputed amount was never billed to it in the form of a municipal water bill at any time from 1990 to 1995. It claims that all water bills it received from the City were paid in full. As part of its lawsuit, Flagship also sought a declaratory judgment that the City's demand for the disputed arrearage was in violation of a 1990 agreement it had with the former Galveston city manager, Douglas W. Matthews, to adjust its water bills. The City contends its former city manager made the adjustments without the approval of the Galveston City Council.

Upon request by Flagship, the trial court granted a temporary restraining order enjoining the City from discontinuing water service to the hotel. At a hearing before the trial court, exhibits, in the form of correspondence between the City and the hotel, were presented to the trial court, and established the City (1) first made demand for payment of the disputed amount by letter dated April 18, 1996, (2) sent a "Final Notice" demand letter on March 17, 1998, and (3) delivered a 24–hour disconnect notice to the hotel on March 21, 2001. Flagship also presented the testimony of Matthews, as well as its president, Daniel Yeh. The trial court

at Houston, participating by assignment.

found in favor of Flagship, and granted a temporary injunction against the City, pending final resolution of the dispute.

The City appealed the trial court's temporary injunction, and by our order of May 11, 2001, we enjoined the City from terminating the water service to the hotel until further order or the final resolution of this appeal.

The underlying dispute between the parties is not presented to us. The parties agree that the dispositive issue before us is whether the trial court had jurisdiction to issue the temporary injunction to prevent the cessation of water service to the hotel. In resolving this issue, we must construe and apply the relevant provisions of the Texas Water Code as a matter of law, and apply the law to the undisputed facts.

## Analysis

■ An applicant for a temporary injunction must establish it has a probable right to the relief sought and it will suffer a probable injury in the interim pending trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *City of Friendswood v. Registered Nurse Care Home*, 965 S.W.2d 705, 707 (Tex.App.-Houston [1st Dist.] 1998, no pet). The decision to grant or deny a temporary injunction lies within the sound discretion of the trial court, and we will not reverse that decision absent an abuse of discretion. *Walling*, 863 S.W.2d at 58; *CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex.App.-Houston [1st Dist.] 1996, no writ). An erroneous application of the law to undisputed facts will constitute an abuse of discretion. *City of Spring Valley v. Southwestern Bell Tel. Co.*, 484 S.W.2d 579, 581 (Tex.1972); *City of Houston v. Todd*, 41 S.W.3d 289, 294 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

■ The temporary injunction granted by the trial court in this case rests upon statutory construction of relevant provisions of the Texas Water Code. Matters of statutory construction are questions of law for the courts to decide. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). Our objective in construing a statute is to determine and give effect to the intent of the lawmaking body. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998); *City of Houston v. Morua*, 982 S.W.2d 126, 129 (Tex.App.-Houston [1st Dist.] 1998, no pet.). In so doing, we look first to the plain and common meaning of the statute's words. *Liberty Mut. Ins.*, 966 S.W.2d at 484; *see also Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). We also construe the statute in the light of the entire body of law existing at the time of its enactment. *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 454 (Tex.App.-Austin 1989, writ denied). Further, we consider the entire statute, not simply the disputed portions. *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994); *Berel v. HCA Health Servs. of Texas, Inc.*, 881 S.W.2d 21, 25 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Each provision must be construed in the context of the entire statute of which it is a part. *Bridgestone/Firestone*, 878 S.W.2d at 133. We also should not adopt a construction that would render a law or provision absurd or meaningless. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex.1987); *Mueller v. Beamalloy*, 994 S.W.2d 855, 860 (Tex.App.-Houston [1st Dist.] 1999, no pet.). In construing a statute, a court may consider the (1) object sought to be obtained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the stat-

ute; and (7) title (caption), preamble, and emergency provision. Tex. Gov't Code Ann. § 311.023 (Vernon 1998).

We review the relevant provisions of the Texas Water Code with these rules in mind.

■ The City contends the doctrine of "primary jurisdiction" applies to its dispute with Flagship. Primary jurisdiction is an administrative law doctrine that arises when a court and an agency have concurrent original jurisdiction over a dispute. *Cash America Int'l, Inc. v. Bennett,* 35 S.W.3d 12, 18 (Tex.2000). The Texas Supreme Court has explained the theory of "primary jurisdiction" as follows:

> The theory is that when the Legislature has delegated the power to an administrative body to regulate a particular industry or business, the courts may not or will not interfere until the board or bureau has had an opportunity to pass upon the matter and has remedied, or attempted to remedy, the situation. Two of the main arguments supporting this theory are: (1) That the commission, board or bureau is staffed with experts trained in the handling of the complex problems presented, and (2) great benefit is to be derived from a uniform interpretation of laws, rules and regulations by an administrative body whereas different results might be reached under similar fact situations by various courts or juries.

*Gregg v. Delhi–Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411, 415 (1961) (discussing jurisdiction of Railroad Commission). The courts have also noted the purpose of the "primary jurisdiction" doctrine is to assure that the agency will not be bypassed on what is especially committed to it. *Foree v. Crown Central Petroleum Corp.,* 431 S.W.2d 312, 316 (Tex.1968) (discussing jurisdiction of Railroad Commission). However, where an issue is inherently judicial in nature, the courts are not ousted from jurisdiction unless the legislature, by a valid statute, has explicitly granted exclusive jurisdiction to an administrative body. *Gregg,* 344 S.W.2d at 415.

The legislative policy and purpose behind the creation of the Texas Water Code is expressed in the statute itself, as follows:

> (a) This chapter is adopted to protect the public interest inherent in the rates and services of retail public utilities.
>
> (b) The legislature finds that:
>
> (1) retail public utilities are by definition monopolies in the areas they serve;
>
> (2) the normal forces of competition that operate to regulate prices in a free enterprise society do not operate for the reason stated in Subdivision (1) of this subsection; and
>
> (3) retail public utility rates, operations, and services are regulated by public agencies, with the objective that this regulation will operate as a substitute for competition.
>
> (c) The purpose of this chapter is to establish a comprehensive regulatory system that is adequate to the task of regulating retail public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities.

Tex. Water Code Ann. § 13.001 (Vernon 2000).

A municipality may discontinue a customer's water service for nonpayment of charges for services provided. *Id.* § 13.250(b)(1) (Vernon 2000). As noted above, the City contends Flagship owes payment for water provided by the City from 1990 to 1995. The City has adopted ordinances setting out its procedures, and

a customer's recourse, in disputes over water disconnection based on nonpayment. GALVESTON, TEX., CHARTER art. II, § 36–69 (1960). It contends Flagship has not complied with these procedures.

With regard to the issue of jurisdiction over disputes regarding water service, section 13.042 of the Water Code provides, in relevant part, as follows:

(a) Subject to the limitations imposed in this chapter and for the purpose of regulating rates and services so that those rates may be fair, just, and reasonable and the services adequate and efficient, *the governing body of each municipality has exclusive original jurisdiction over all water and sewer utility rates, operations, and services[1] provided by a water and sewer utility within its corporate limits.*

. . . .

(d) *The commission[2] shall have exclusive appellate jurisdiction* to review orders or ordinances of those municipalities as provided in this chapter.

TEX. WATER CODE ANN. § 13.042 (Vernon 2000) (emphasis added).

An "order" of a municipality is "the whole or part of the final disposition, whether affirmative, negative, injunctive, or declaratory in form, of the regulatory authority in a matter other than rulemaking. . . ." *Id.* § 13.002(14) (Vernon 2000).

We have found only one case discussing the issue of jurisdiction in the context of the Water Code. In *Jordan v. Staff Water Supply Corp.*, 919 S.W.2d 833, 835 (Tex. App.-Eastland 1996, no writ), a stockholder of a nonprofit water supply corporation sued to appoint a receiver for the assets of the corporation, and alleged the corporation had failed to supply water and water meters to every person living within the area served by the corporation, and had improperly increased its water rates. *Id.* at 834. The court held that, pursuant to the provisions of the Water Code, the TNRCC had primary jurisdiction over the claim of failure to provide universal service within its served area, and had primary appellate jurisdiction over the claim of improper rate increases. *Id.* at 835. The court in *Jordan* did not discuss a municipality's attempt to discontinue a customer's water service, and did not address the issue of jurisdiction under section 13.042.

Flagship points to *Annett v. Sunday Canyon Water Supply Corp.*, 826 S.W.2d 623, 626–27 (Tex.App.-Amarillo 1991, writ denied), as standing, indirectly, for the proposition that the trial court in this case had jurisdiction to grant a temporary injunction. *Annett* involved the discontinuance of water service by a nonprofit water service corporation because of a customer's refusal to install a check valve in the water line. *Id.* at 624. The court held the water service provider was entitled to discontinue service under section 13.250 of the Water Code for the customer's failure to comply with the provider's "reasonable rules and regulations." *Id.* at 627. However, the court did not address whether it had jurisdiction in proceeding to consider the merits of the parties' dispute.

■ We find neither *Jordan* nor *Annett* instructive on the issue before us. In ad-

---

1. The Code defines "services," in part, as "any act performed, anything furnished or supplied, and any facilities or lines committed or used by a retail public utility in the performance of its duties under this chapter to ... the public." TEX. WATER CODE ANN. § 13.002(21) (Vernon 2000).

2. The "commission" referred to is the Texas Natural Resource Conservation Commission ("TNRCC"). *Id.* § 13.002(5) (Vernon 2000).

dition, we conclude the doctrine of primary jurisdiction is not applicable to this case. As noted above, the doctrine of primary jurisdiction presupposes the existence of concurrent jurisdiction between the courts and an agency. Here, the Water Code vests the City with *exclusive* original jurisdiction over this dispute, and vests the TNRCC with *exclusive* appellate jurisdiction. Thus, the doctrine of primary jurisdiction does not apply here. When the legislature vests exclusive jurisdiction in an agency, exhaustion of administrative remedies is required before a party may seek judicial review of an agency's action. *Bennett*, 35 S.W.3d at 15.

Following the plain meaning of the relevant provisions of the Water Code, we conclude exclusive original jurisdiction over the City's decision to shut off Flagship's water is vested with the City. Further, we conclude exclusive appellate jurisdiction over the City's final disposition of this dispute is vested with the TNRCC.

Flagship contends that, under section 13.042(f) of the Water Code, the TNRCC has no power to reverse a decision by the City to shut off its water. We disagree. Section 13.042(f) provides, as follows:

> This subchapter does not give the commission power or jurisdiction to regulate or supervise the rates or service of a utility owned and operated by a municipality, directly or through a municipally owned corporation, within its corporate limits or to affect or limit the power, jurisdiction, or duties of a municipality that regulates land and supervises water and sewer utilities within its corporate limits, *except as provided by this code.*

TEX. WATER CODE ANN. § 13.042(f) (Vernon 2000) (emphasis added). As we hold, and as the City concedes, section 13.042(d)

vests appellate authority over this dispute with the TNRCC. Section 13.042(f) merely limits the power of the TNRCC to enforce the legislative purpose of the Water Code "to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities." *See id.* § 13.001.

Further, and contrary to the assertions of Flagship, relying on the provisions of the Water Code does not leave a municipal water customer without recourse to emergency relief, if necessary. The code provides the TNRCC with the authority to issue emergency orders, with or without a hearing:

> [T]o compel a water or sewer service provider that has obtained or is required to obtain a certificate of public convenience and necessity to provide continuous and adequate water service, sewer service, or both, if the discontinuance of the service is imminent or has occurred because of the service provider's actions or failure to act.

TEX. WATER CODE ANN. § 13.041(d)(1) (Vernon 2000).[3] Thus, instead of seeking emergency injunctive relief through the courts, a municipal water customer may seek similar relief from the TNRCC, after exhausting the administrative remedies provided by the municipality.

We sustain the City's first issue on appeal. Therefore, we need not address its second issue.

## Conclusion

We hold, pursuant to the clear provisions of the relevant sections of the Texas Water Code, the trial court lacked jurisdiction over this specific dispute regarding Flagship's alleged water service arrearage

---

3. The City is required to hold a certificate of public convenience and necessity. *Id.* § 13.242(a) (Vernon 2000).

and the City's intention to discontinue water service to the hotel.

We do not address, and make no comment regarding, the merits of the underlying dispute between the parties. Further, we do not hold that the trial court lacks jurisdiction over any other claims brought by the parties.

We vacate the temporary injunction granted by the trial court, and we withdraw our order of May 11, 2001.