Affirmed in Part, Reversed and Remanded in Part, and Majority and
Concurring Opinions filed January 13, 2009








Affirmed in Part, Reversed and Remanded in Part, and Majority and Concurring
Opinions filed January 13, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00330-CV

_______________

 

TARA PARTNERS, LTD., GRANADA TERRACE, LTD., DAVID R.
WISE, 1606 SAVANNAH LLC, WINDSOR GARDENS, LTD., AND FREEPORT VILLA BRAZOS
APARTMENTS, LTD., Appellants

 

V.

 

 

CITY OF SOUTH HOUSTON, Appellee

                                                         
                                                                                      

On Appeal from the 157th District Court


Harris County, Texas

Trial Court Cause No. 2005-14978

                                                                                                                                               


 

M A J O R I T Y   O P I N I O N








In this
suit for declaratory judgment and damages related to fees set by a water and
sewer utility owned by the City of South Houston, appellants Tara Partners,
Ltd., Granada Terrace, Ltd., David R. Wise, 1606 Savannah LLC, Windsor Gardens,
Ltd., and Freeport Villa Brazos Apartments, Ltd. challenge an order granting
the City=s plea to the jurisdiction and
dismissing appellants= lawsuit without prejudice.  Concluding the district court
had jurisdiction over appellants= claims disputing the imposition of
fees under the Texas Water Code, but not over appellants= claims for reimbursement for previously
paid fees or over Tara Partners, Ltd.=s claims related to an alleged
settlement agreement, we affirm in part, reverse in part, and remand for
further proceedings consistent with this opinion.

I.  Factual and Procedural Background

The City of South Houston (Athe City@) is a general law municipality
located within Harris County.  The City operates its own water and sewer
utility systems.  Appellant Tara Partners, Ltd. (ATara@) owns apartments within and outside
the City=s boundaries.  The remaining
appellants own apartments solely within the City=s boundaries.  The City provides
water to appellants= apartments.  From 1992 until 2004, the minimum bill for all
city customers was based on water meter size, with an additional charge based
on water consumption.

In 2004,
the City adopted an ordinance by which it charged residential, outside city
residential, and commercial residential users a minimum monthly base rate of
$10.00 for water and $12.00 for sewer Afor each available unit connected to
a meter, whether those units are occupied or vacant.@  As before, there was also a usage
charge.  Appellants fell within the Acommercial residential user@ category, defined as Aall multi-family units containing two
or more living units and including trailer parks, motels, apartment projects
and hotels.@[1]  Appellants= estimated water and sewer charges
for a two-hundred-unit apartment, with a three-inch meter, and using 750,000
gallons of water a month would increase from $39,294 to $91,622 under the 2004
ordinance.








Appellants
sued the City in Harris County District Court, and Tara also separately sought
review before the Texas Commission on Environmental Quality (ATCEQ@) pursuant to Texas Water Code
Section 13.043(b)(3).[2]  While the
district court case was proceeding, attorneys for Tara and the City signed a
hand printed settlement Aresolution,@ which provided in part that the parties agreed the rates set
forth in the 2004 ordinance were not Ajust and reasonable@ and Aall increased amounts collected under
[the 2004 ordinance] shall be returned to [Tara] within 30 days.@  According to appellants, the City
did not comply with this agreement.  In amended pleadings in district court,
appellants then alleged the following Acauses of action@: unlawful and unconstitutional
taxation in violation of Texas law, unreasonable and unjustified rate
discrimination under Texas common law, arbitrary and unreasonable rates under
Texas common law, breach of contract, and promissory estoppel (the latter two
raised only by Tara and referring to the handwritten resolution).  As
additional Acauses of action,@ appellants sought a declaratory judgment, including a
declaration the handwritten resolution was enforceable, actual damages
consisting of Aall of the Surcharge collected by [the City],@ and attorneys= fees under the Uniform Declaratory
Judgment Act.[3]








The City
filed a plea to the jurisdiction, and alternatively, special exceptions.  The
City argued (1) under the Texas Water Code provisions regarding exclusive
original and exclusive appellate jurisdiction, the district court lacked
subject matter jurisdiction over appellants= challenges to the water and sewer
rates;[4] (2) to the
extent appellants were seeking common law tort damages, there was no waiver of
governmental immunity or constitutional authorization as would give the
district court jurisdiction over such claims; and (3) the settlement resolution
was not a contract subject to the subchapter under which the legislature had
waived governmental immunity for claims for breach of contract.[5] 
Following an  evidentiary hearing, the trial court granted the City=s plea to the jurisdiction.








II.  Legal Standards and Standard of Review

In four
issues, appellants challenge the trial court=s order granting the City=s plea to  the jurisdiction.[6] 
In its plea, the City argued provisions of the Texas Water Code gave TCEQ
exclusive appellate jurisdiction over the rate claims and governmental immunity
precluded the remaining claims.








In a plea to the jurisdiction, a party challenges the
trial court=s authority to determine the subject matter of the
cause of action.  City
of Mont Belvieu v. Enter. Prod. Operating, L.P., 222 S.W.3d 515,
518 (Tex. App.CHouston [14th Dist] 2007, no pet.).  Because subject
matter jurisdiction is a question of law, we review the
trial court=s decision de novo.  Id.  In deciding a plea to the jurisdiction, we may not weigh the merits of the claim, but
must consider only the plaintiff=s pleadings and
the evidence pertinent to the jurisdictional inquiry. See Tex. Natural Res.
Conservation Comm=n v. White, 46 S.W.3d 864,
868 (Tex. 2001);  Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554B55 (Tex. 2000).
When we consider a trial court=s order on a plea to
the jurisdiction, we construe the pleadings in the
plaintiff=s favor and look to the pleader=s intent.  See
Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
446 (Tex. 1993).  To prevail, the party asserting the plea must show that, even
if all the allegations in the plaintiff=s pleadings are
taken as true, an incurable jurisdictional defect appears on the face of the
pleadings, rendering it impossible for the plaintiff=s petition to
confer jurisdiction on the trial court. City of Mont Belvieu, 222 S.W.3d at 518.            If a plaintiff
fails to plead sufficient facts affirmatively demonstrating the trial court=s jurisdiction,
but the pleadings do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiff should
be afforded the opportunity to amend. Tex. Dep=t of Parks &
Wildlife v. Miranda,
133 S.W.3d 217, 226B27 (Tex. 2004); County of Cameron v. Brown, 80 S.W.3d 549,
555 (Tex. 2002).  However, if the pleadings affirmatively negate the existence
of jurisdiction, a plea to the jurisdiction
may be granted without allowing the plaintiff an opportunity to amend. Miranda,
133 S.W.3d at 227; Brown, 80 S.W.3d at 555.  Also, through inaction, a plaintiff may
lose the opportunity to amend.  See Haddix v. Am. Zurich Ins. Co.,
253 S.W.3d 339, 347 (Tex. App.CEastland 2008, no pet.).[7]

III.  Appellants= Claims and the City=s Plea

A.  Appellants= Rate Claims and the Texas Water Code

In their
first issue, appellants argue the trial court erred in dismissing their rate
claims.  Appellants= first three causes of action against the City were cast as
(1) AUnlawful and Unconstitutional
Taxation in Violation of Texas Law,@ (2) AUnreasonable and Unjustified Rate
Discrimination@ under Texas common law, and (3) AArbitrary and Unreasonable Rates@ under Texas common law.  In each of
these Acauses of action,@ appellants attacked the increase in
rates resulting from passage of the 2004 ordinance.  Appellants alleged the
increased rates were not related to the City=s costs in providing service, were
excessive in comparison to charges for other customers, and were not based on
evidence or analysis.  Appellants= sixth cause of action was a request
for a declaration incorporating appellants= allegations in the first three
causes of action, as well as seeking declarations (1) they were entitled to
reimbursement for past payment and (2) the settlement agreement signed by
counsel for Tara and the City was enforceable.








In its
plea to the jurisdiction, the City argued, in part, that appellants= lawsuit was Aessentially a challenge to the rates
that the City charges for utility services.@  Citing Texas Water Code section
13.042(d), the City then contended the TCEQ had exclusive appellate
jurisdiction over that dispute and therefore the district court lacked
jurisdiction.

Texas district courts are courts of general jurisdiction
and have jurisdiction over all actions, proceedings and remedies Aexcept in cases where exclusive,
appellate, or original jurisdiction may be conferred by [the Texas] Constitution
or other law on some other court, tribunal, or administrative body.@  Tex. Const. Art. V, ' 8.  An agency has
exclusive jurisdiction when a pervasive regulatory scheme indicates that the
legislature intended for the regulatory process to be the exclusive means of
remedying the problem to which the regulation is addressed.  In re Entergy
Corp., 142 S.W.3d 316, 322 (Tex. 2004).

The
question in the present case, therefore, is whether the legislature intended
the regulatory process as the exclusive means of remedying a rate dispute
between a municipally owned water and sewer utility and ratepayers living
within the corporate limits of that municipality.  We conclude it did not.

Water
Code section 13.042 provides for a municipality=s original jurisdiction and for  TCEQ=s original and appellate
jurisdiction:

(a) Subject to the limitations imposed in this chapter and for the
purpose of regulating rates and services so that those rates may be fair, just,
and reasonable and the services adequate and efficient, the governing body of
each municipality has exclusive original jurisdiction over all water and sewer
utility rates, operations, and services provided by a water and sewer utility
within its corporate limits.

(b) The governing body of a municipality by ordinance may elect to have
the commission exercise exclusive original jurisdiction over the utility rates,
operation, and services of utilities, within the incorporated limits of the
municipality.








(c) The governing body of a municipality that surrenders its
jurisdiction to the commission may reinstate its jurisdiction by ordinance at
any time after the second anniversary of the date on which the municipality
surrendered its jurisdiction to the commission, except that the municipality
may not reinstate its jurisdiction during the pendency of a rate proceeding
before the commission.  The municipality may not surrender its jurisdiction
again until the second anniversary of the date on which the municipality
reinstates jurisdiction.

(d) The commission shall have exclusive appellate jurisdiction to review
orders or ordinances of those municipalities as provided in this chapter.

(e) The commission shall have exclusive original jurisdiction over
water and sewer utility rates, operations, and services not within the
incorporated limits of a municipality exercising exclusive original
jurisdiction over those rates, operations, and services as provided in this
chapter.

(f) This subchapter does not give the commission power or jurisdiction
to regulate or supervise the rates or service of a utility owned and operated
by a municipality, directly or through a municipally owned corporation, within
its corporate limits or to affect or limit the power, jurisdiction, or duties
of a municipality that regulates land and supervises water and sewer utilities
within its corporate limits, except as provided by this code.

 

Tex. Water Code Ann. ' 13.042.  In addition, Water Code
section 13.043(b)(3) provides that  ratepayers residing outside the corporate
limits of a municipality Amay appeal the decision of the governing body of the entity
affecting their water, drainage, or sewer rates to the commission.@  Id. ' 13.043(b).








Our ultimate goal in construing a statute is to give effect to the legislature=s intent as
expressed in the language of the statute.  F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 683 (Tex. 2007); Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 892 (Tex. 2000).  In doing so, we
must always consider the statute as a whole rather than its isolated
provisions.  Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex.
2001).  AWe should not give one provision a
meaning out of harmony or inconsistent with other provisions, although it might
be susceptible to such a construction standing alone.@  Id.  Instead, we presume
that both the statute and the legislative act are intended to be effective in
their entirety.  Allegheny Mut. Cas. v. State, 710 S.W.2d 139, 141 (Tex.
App.CHouston [14th Dist.] 1986, pet. ref=d).  Thus, in construing a statuteCregardless of whether it is ambiguous
on its faceCwe may consider, among other matters, the following:  the object sought
to be attained; the circumstances under which the statute
was enacted; common law or former statutory provisions, including laws on the
same or similar subjects; and the consequences of a particular construction.  See
Tex. Gov=t Code Ann. ' 311.023 (Vernon 2005).[8]

In
arguing TCEQ has exclusive jurisdiction over appellants= rate claims, the City relies
primarily on Water Code subsection 13.042(d).  Unlike subsections (a), (b), and
(e), however, subsection (d) contains no reference to Arates.@  See Tex. Water Code Ann. ' 13.042(a), (b), (d), (e).  Instead,
subsection (d) grants the commission exclusive appellate jurisdiction to Areview orders or ordinances.@  Id. (d).  Additionally, to
interpret subsection (d) as granting TCEQ exclusive appellate jurisdiction over
rate decisions by the governing bodies of municipally owned water and sewer
utilities would render superfluous the section which permits non-resident
ratepayers to appeal to TCEQ a Adecision of the governing body of the entity affecting their
water, drainage, or sewer rates.@  Id. '13.043(b)(3); see F.F.P. Operating
Partners, L.P., 237 S.W.3d at 711 (acknowledging fundamental rule that
court must give effect to every sentence, clause, and word of a statute so no
part will be rendered superfluous).








Finally,
subsection 13.042(f) specifically cautions that the Water Code subchapter
relating to jurisdiction Adoes not give [TCEQ] power or jurisdiction to regulate or
supervise the rates or service of a utility owned and operated by a
municipality . . . . except as provided by this code.@   Tex. Water Code Ann. ' 13.043(f).  This limitation is
consistent with the legislative history of public utility regulation in Texas,
which Arepresents an attempt to retain local
regulation of public utilities while empowering the Commission to regulate
regional service or service outside municipal limits.@  Pub. Util. Comm=n v. City of Austin, 728 S.W.2d 907, 913 (Tex. App.CAustin 1987, writ ref=d n.r.e.); see also City of
Sherman v. Pub. Util. Comm=n, 643 S.W.2d 681, 683 (Tex. 1983) (describing
municipalities= opposition to state regulation of municipally owned utilities and
explaining statutory compromise of retaining municipal regulation within a
municipality=s territorial boundaries and exempting municipalities from most of the
statute=s regulatory provisions).[9]

Based on
the plain language of the Texas Water Code and the history of predecessor
statutes, we conclude the Texas Water Code does not confer exclusive appellate
jurisdiction over the rates charged by a municipally owned utility to
ratepayers residing within its territorial boundaries.  See City of W.
Tawakoni v. Williams, 742 S.W.2d 489, 490B91, 493 & 493 n.2 (Tex. App.CDallas 1987, writ denied) (indicating
same in relation to predecessor of present Water Code).








The
City, however, relies on the following cases, in which courts construed section
13.042(d) as vesting TCEQ with exclusive appellate jurisdiction over the claims
in question:  City of Galveston v. Flagship Hotel, Ltd., 73 S.W.3d 422
(Tex. App.CHouston [1st Dist.] 2002, no pet.) (AFlagship I@); Flagship Hotel, Ltd. v. City of
Galveston, 117 S.W.3d 552 (Tex. App.CTexarkana 2003, pet. denied) (AFlagship II@); and City of Donna v. Victoria
Palms Resort, Inc., No. 13-03-375-CV, 2005 WL 1831593 (Tex. App.CCorpus Christi Aug. 4, 2005, pet.
denied) (mem. op.).[10]  In these
cases, however, courts were either not reviewing rates or provided only minimal
reasoning in support of their conclusions.

In Flagship
I, the issue was whether the district court had jurisdiction to issue a
temporary injunction to prevent cessation of water service to a hotel because
of the hotel=s alleged arrearage in payment of its water bills.  73 S.W.3d at 423B24.  The court  quoted sections
13.042(a) and (d).  Id. at 426.  It then quoted the definition of an Aorder@:  AAn >order= of a municipality is >the whole or part of the final
disposition, whether affirmative, negative, injunctive, or declaratory in form,
of the regulatory authority in a matter other than rulemaking . . . .=@  Id. (quoting Tex. Water Code
Ann. ' 13.002(14)).  Without further
analysis of section 13.042 or other provisions of the code, the court then
concluded Aexclusive original jurisdiction over the City=s decision to shut off Flagship=s water is vested with the City. 
Further, we conclude exclusive appellate jurisdiction over the City=s final disposition of this dispute
is vested with the TNRCC.@  Id. at 427.[11]








The
court next rejected the hotel=s contention that, under section 13.042(f), TNRCC (now TCEQ)
had no power to reverse a decision by the city to shut off the hotel=s water.  Id.[12] 
In quoting the section, the court emphasized the last phrase (Aexcept as provided by this code@) and then observed that section
13.042(f) Amerely limits the power of the TNRCC to enforce the legislative purpose
of the Water Code >to assure rates, operations, and services that are just and
reasonable to the consumers and to the retail public utilities.=@ Id. (quoting Tex. Water Code
Ann. ' 13.042(f)).  Although the hotel had
claimed breach of contract and sought declaratory relief, the appellate court
specifically limited its jurisdictional holding to the hotel=s request for injunctive relief.  Id.
at 423B24, 428.

In Flagship
II, on appeal after remand of Flagship I, one issue was whether the
district court erred in granting the city=s plea to the jurisdiction over
Flagship=s claim for declaratory relief
requesting a judgment that its alleged water and sewer arrearage was barred by
the statute of limitations and agreements between the city manager and
Flagship.  Flagship II, 117 S.W.3d at 562B63.  Without discussion, the Flagship
II court found the Flagship I  court=s reasoning Apersuasive,@ and held AFlagship must exhaust its
administrative remedies through the Texas Commission on Environmental Quality,
formerly the TNRCC.@  Id. at 563.

Finally,
in City of Donna, Victoria Palms sued the city over its refusal to
credit an amount of alleged water overcharges and its threat to disconnect
water service.  2005 WL 1831593, at *3.  The appellate court reasoned:

The City=s refusal to credit Victoria Palms with the amount of
alleged overcharges constitutes a whole or part of a final disposition of the
City, other than rulemaking; that decision therefore constitutes an order under
the water code.  [Tex. Water Code Ann. ']
13.002(14).  The TCEQ has exclusive appellate jurisdiction to review orders or
ordinances of the City.  See id. at '
13.042(d).

 

Id. at *4.  The court also relied on Flagship
I, referring to its conclusion that the predecessor to TCEQ had exclusive
appellate jurisdiction over the city=s final disposition of a dispute with
a hotel over discontinuing water service for nonpayment of fees.  Id.
(citing Flagship I, 73 S.W.3d at 427).








We do
not find Flagship I and II and City of Donna persuasive
authority for the present case because they either do not involve review of
rates or contain only minimal reasoning in support of their results.  Instead,
for the reasons discussed above, we conclude the legislature has not conferred
exclusive appellate jurisdiction on TCEQ over water and sewer rates a
municipally owned water and sewer utility charges ratepayers residing within
its corporate limits.  Accordingly, we hold the district court has jurisdiction
over appellants= Water Code claims.  See Tex. Const. Art. V, ' 8 (granting district courts general
jurisdiction unless exclusive, appellate, or original jurisdiction conferred on
other entity).

We
therefore sustain appellants= first issue in part.  We reverse the district court=s dismissal of appellants= first three claims in their third
amended petition and dismissal of appellants= claim for declaratory judgment
(sixth claim) insofar as appellants requested a declaration regarding rates,
but not insofar as they requested a declaration regarding reimbursement for
past amounts paid or enforceability of the settlement agreement.

B.  Appellants= Common Law, Breach of Contract, and
Declaratory Judgment  Claims

In issue
two, appellants argue the trial court erred in dismissing their Acommon law and breach of contract
claims@ because they fall outside the
purview of TCEQ=s exclusive jurisdiction.  Appellants first refer to their Aseveral common law claims for
unlawful and unconstitutional taxation, unreasonable and unjustified rate
discrimination, and arbitrary and unreasonable water and sewer rates, as well
as numerous requests for declaratory judgment.@  As discussed in Section III. A.,
above, these causes of action are, in essence, attacks on the increase in rates
resulting from passage of the 2004 ordinance; and we have concluded the
district court has jurisdiction over these claims.

In issue
two, appellants also refer to Tara=s claims for breach of contract and
promissory estoppel.  We discuss those claims in Section III. D., below, in
response to appellants= fourth issue.  Because of our resolution of appellants= first and fourth issues, we do not
discuss their second issue.

 








C.  Appellants= Claims for Equitable Relief and
Attorneys= Fees

In issue
three, appellants argue, if the ordinance is declared void ab initio, they have
a right to recover unlawful water and sewer fees and attorneys= fees.  Under this issue, appellants
contend (1) the City is not immune from suits for equitable relief, (2)
appellants should be allowed to seek reimbursement of the surcharges already
paid pursuant to the Water Code=s requirement that the City have just and reasonable rates,
(3) the trial court has jurisdiction to order reimbursement under the Uniform
Declaratory Judgment Act (AUDJA@), (4) it would be against public policy for the City to
receive a windfall, and (5) the UDJA waives governmental immunity for attorneys= fees.  In short, in issue three,
appellants focus on the monetary awards they seek (1) for previously paid water
and sewer fees and (2) for attorneys= fees.

The City
responds by invoking governmental immunity.  The City observes that, despite
having filed their third amended petition after the City filed its plea to the
jurisdiction, appellants did not allege waiver of governmental immunity.  More
specifically, the City argues that appellants Ahave yet to plead a legislative
waiver of the City=s immunity to a common law claim for monetary or equitable
relief.@[13]








In
Texas, sovereign immunity protects the state against lawsuits for damages
unless the state has consented to suit.  See Miranda, 133 S.W.3d at
224.  Cities, as political subdivisions of the state, are entitled to immunity unless it has been waived.  See San Antonio Indep. Sch.
Dist. v. McKinney, 936 S.W.2d 279, 283 (Tex. 1996).  Sovereign immunity
encompasses two distinct principles: immunity from suit and immunity from
liability.  Miranda, 133 S.W.3d at 224.[14]
Although immunity from liability is an affirmative defense, immunity from suit
deprives a court of subject matter jurisdiction.  Id.  Because immunity
from suit, unlike immunity from liability, affects the court=s jurisdiction,
immunity from suit is properly raised in a plea to the jurisdiction.  See
Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex. 2003).

Money
had and received. 
Appellants rest their claim for monetary damages primarily on the equitable
doctrine of money had and received.[15]  As the
First Court of Appeals recently explained:








[W]here a
claim for declaratory or injunctive relief is brought seeking the refund of
illegally collected tax payments, governmental immunity will not apply if the
taxpayer alleges that the payments were made as a result of fraud, mutual
mistake of fact, or duress, whether express or implied.  See Dallas County
Cmty. College Dist. v. Bolton, 185 S.W.3d 868, 876B79 (Tex. 2005) (holding that a taxpayer cannot bring a
suit for the return of illegally collected taxes if the payments were made
voluntarily); see also Camacho v. Samaniego, 954 S.W.2d 811, 822 (Tex.
App.CEl Paso 1997, pet. denied).  The revenue generated
from a tax determined to be illegal should not be treated as property of the
State or municipality to which the principles of sovereign immunity apply, and
an illegally collected fee should be refunded if paid as a result of fraud,
mutual mistake of fact, or duress, without respect to waiver of sovereign
immunity.  See Camacho, 954 S.W.2d at 822; Austin Nat=l Bank of Austin v. Sheppard, 123 Tex. 272, 71 S.W.2d 242, 246 (1934).  No
legislative consent to sue is needed under these circumstances.

 

Nivens v. City of
League City, 245
S.W.3d 470, 474 (Tex. App.CHouston [1st Dist.] 2007,  pet. denied).

In Nivens,
taxpayers asserted claims for money had and received, breach of contract, and
mistake, but had not sought declaratory or injunctive relief regarding levy and
refund of allegedly illegal municipal utility district taxes.  Id. at
475.  The taxpayers also did not allege they made any payments as a result of
fraud, mutual mistake of fact, or duress.  Id.  The appellate court held
appellants= claims were barred by governmental immunity.  Id.

Appellants
in the present case argue they alleged duress as follows:  ASince December 1, 2004, under the
[2004] Ordinance, Plaintiffs have been forced to pay arbitrary, unreasonable,
excessive, confiscatory, and discriminatory charges for water and sewer
service.@  They further request this court to
take judicial notice of provisions in the City=s Code of Ordinances, under which the
City is authorized to impose late payment charges and discontinue water service
for delinquent accounts.  Appellants now contend they would be subject to Apunishment@ under these provisions.  See
Dallas County Comm. College Dist. v. Bolton, 185 S.W.3d 868, 877 (Tex.
2005) (stating reimbursement of illegal fees and taxes allowed when public
entity compels compliance with void law and subjects person to punishment if he
refuses or fails to comply).








Despite
having included multiple paragraphs setting forth specific facts related to the
enactment and effects of the 2004 Ordinance, appellants never pleaded the
potential for penalties of late  payment charges and cessation of water
service.  They never characterized late charges and cessation of water as Apunishment@ or duress.  Their reference to being
Aforced@ to pay the 2004 water and sewer
charges appears in a paragraph completely separate from their jurisdictional
paragraphs.

Even
construing appellants= pleadings liberally, we conclude that, like the taxpayers in
Nivens, appellants did not allege facts indicating they made water and
sewer payments as a result of fraud, mutual mistake of fact, or duress.  Nivens,
245 S.W.3d at 475.  Just as were the taxpayers= claims in Nivens, appellants= claims in the present case are
barred by governmental immunity.  See id.

Appellants,
however, contend that, if they have not pleaded sufficient facts to allege a
claim for money had and received, they should be allowed to amend their
petition.  See Hull v. Davis, 211 S.W.3d 461, 463 (Tex. App.CHouston [14th Dist.] 2006, no pet.)
(stating when plaintiff fails to plead facts establishing jurisdiction, but
petition does not affirmatively demonstrate incurable defects in jurisdiction,
issue is one of pleading sufficiency, and plaintiff should be afforded the
opportunity to amend).  We note that appellants amended their petition after
the City filed its plea to the jurisdiction but did not include facts or
allegations that pertain to late fees and cessation of service.  However, we
acknowledge that appellants= pleadings do not affirmatively negate the trial court=s jurisdiction over their money had
and received claim.  After the trial court granted the City=s plea to the jurisdiction,
appellants did not seek or request an opportunity for another amendment to
their petition.  See Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d
835, 839B40 (Tex. 2007) (indicating plaintiff
should be given opportunity to amend after a trial court finds merit in a plea
to the jurisdiction).








Although
the general rule reflects a preference for allowing amendment, a plaintiff may
forfeit this opportunity through inaction.  Haddix, 253 S.W.3d at 347. 
By failing to seek permission to amend after the trial court found the City=s plea meritorious, appellants
forfeited the opportunity to amend while this case was pending in the trial
court.  See id.; see also Dahl ex rel. Dahl v. State, 92 S.W.3d
856, 862 n.6 (Tex. App.CHouston [14th Dist.] 2002, no pet.) (noting plaintiffs
arguably waived complaint that trial court failed to provide them opportunity
to amend pleadings when they did not seek leave to amend).[16]

Monetary
damages under the UDJA.  As part of issue four, appellants contend the district court
had jurisdiction to order reimbursement under UDJA section 37.011.  Section
37.011 provides in relevant part:  AFurther relief based on a declaratory
judgment or decree may be granted whenever necessary or proper.  The
application must be by petition to a court having jurisdiction to grant the
relief.@  Tex. Civ. Prac. & Rem. Code Ann. ' 37.011  (Vernon 2008).  As
appellants admit, Afurther relief@ under section 37.011 is typically
injunctive relief.  See State v. Anderson Courier Serv., 222 S.W.3d 62,
66 (Tex. App.CAustin 2005, pet. denied) (ATypically, further relief under
section 37.011 is granted in the form of an injunction for the purpose of
enforcing a declaratory judgment where the evidence shows that a party will not
comply with the judgment.@).  Private parties cannot circumvent governmental immunity
by characterizing a suit for money damages as a declaratory‑judgment
claim.  City of Houston v. Williams, 216 S.W.3d 827, 828B29 (Tex. 2007).

Attorneys= fees under the UDJA.  Finally, appellants argue the UDJA
waives governmental immunity for an award of attorneys= fees.  We agree.  See Tex. Educ.
Agency v. Leeper, 893 S.W.2d 432, 446 (Tex. 1994) (concluding that, by
authorizing declaratory judgment actions to construe legislative enactments of
governmental entities and authorizing awards of attorney fees, UDJA necessarily
waives governmental immunity for such awards).  That the UDJA waives immunity
for attorneys= fees awards, however, does not mean it waives immunity for damages
awards.








We
overrule appellants= third issue to the extent it relates to the district court=s jurisdiction over claims for
monetary damages.  We sustain appellants= third issue only to extent it
relates to the district court=s jurisdiction over an award of attorneys= fees if such an award is warranted.

D.  Breach of
Contract and Promissory Estoppel Based on the Settlement Agreement

In issue
four, Tara argues that the district court had jurisdiction to enforce the Asettlement agreement@ (an undated handwritten Aresolution@ signed by appellants= counsel and the City=s counsel) which purportedly arose
from the proceedings before TCEQ.  Tara initially contends the trial court has
jurisdiction because the agreement arose from a forum where liability had been
waived.

In
support, appellants cite Texas A & M University-Kingsville v. Lawson,
87 S.W.3d 518, 521 (Tex. 2002) (plurality op.).  Writing for the plurality in Lawson,
Justice Hecht observed, A[W]hen a governmental entity is exposed to suit because of a
waiver of immunity, it cannot nullify that waiver by settling the claim with an
agreement on which it cannot be sued.@  Id. 








The City
responds that no settlement agreement exists because the city council never
authorized the resolution, and therefore statutory provisions allowing for
adjudication of claims arising under written contract with local governmental
units do not apply.[17]  Under Texas
Local Government Code section 271.152, a local governmental entity authorized
by statute or constitution to enter into contract, and which enters into a
contract subject to the subchapter, waives sovereign immunity to suit for
purpose of adjudicating a claim for breach of the contract.  Tex. Loc. Gov=t Code Ann. ' 271.152 (Vernon 2005).  A contract
subject to the subchapter is  Aa written contract stating the essential terms of the
agreement for providing goods or services to the local governmental entity that
is properly executed on behalf of the local governmental entity@) (emphasis added).  Id. ' .151(2).

Tara
relies solely on the handwritten Aresolution@ executed by its counsel and counsel
for the City.  As an initial matter, we note the following language in that
document:  ANow therefore be it resolved by The City Council . . . .@  At the hearing on the plea to the
jurisdiction, City Secretary Maria Vega testified she had searched the City=s records back to 2004 and had not
found the handwritten resolution.  Neither had she found any record of the City=s having adopted or authorized the
resolution.  She had attended all the city council meetings for Athe last couple of years@ and was not aware of the city
council=s having authorized such a
resolution.  The resolution was not in a form that she would present or execute
for the City.

A city=s governing body may not delegate the
right to make decisions affecting the transaction of city business.  City of
San Benito v. Rio Grande Valley Gas Co., 109 S.W.3d 750, 757 (Tex. 2003). 
Although cities may delegate to others the right to perform acts and duties
necessary to the transaction of the city=s business, they can do so only by
resolution or ordinance, by a majority vote.  Id.

Thus,
even if we assume the proceeding before the TCEQ was one in which the City=s immunity had been waived, we cannot
conclude the handwritten resolution constituted an agreement between Tara and
the City.  The plurality opinion in Lawson does not support a waiver of
the City=s immunity in the present case.








Tara
also contends the district court has jurisdiction over its breach of contract
and equitable estoppel claims under AFederal Sign=s >Equitable Waiver by Conduct= Exception@ to governmental immunity.  See
Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 408 n.1 (Tex. 1997) (stating
there may be circumstances when Athe State may waive its immunity by
conduct other than simply executing a contract so that it is not always immune
from suit when it contracts@).  Tara specifically directs this court=s attention to Texas Southern
University v. State Street Bank & Trust, 212 S.W.3d 893 (Tex. App.CHouston [1st Dist.] 2007, pets.
denied).[18]

In State
Street Bank the First Court of Appeals held, because of the extraordinary
factual circumstances of the case, the State was not immune from suit.  Id.
at 907B08.  In that case, Texas Southern
University had entered into a contract for equipment and services.  Id.
at 908.   After receiving approximately $13 million in equipment and services,
the university refused to pay, claiming the contracts were invalid.  Id. 
Additionally, one of the plaintiffs argued that the injustice was even worse
than the facts found by the trial court because the case also included an
additional fact not appearing in any of the prior cases:  A>The government officials lured
[plaintiff] into the Master Lease with false promises that the contract would
be valid and enforceable, then disclaimed any obligation on the contract by
taking the position that the contract was not valid after all.=@  Id.








In
neither its pleadings nor its responses to the City=s plea to the jurisdiction, did Tara
allege it was Alured@ or misled in relation to the handwritten resolution.[19] 
By law, such a Aresolution@ would not be binding on the City until passed by a majority
vote at a duly assembled meeting.  See City of San Benito, 109
S.W.3d at 757.  Tara was charged with notice of the limits of the authority of
the City=s counsel.  See State v. Ragland
Clinic‑Hospital, 138 Tex. 393, 159 S.W.2d 105, 107 (1942) (stating,
in context of suit against state, that because powers of all state officers are
fixed by law, all persons dealing with them are charged with notice of the
limits of their authority and are bound at their peril to ascertain whether
contemplated contract is within power conferred).  The circumstances of the
present case do not rise to the level of the Aextraordinary factual circumstances@ in State Street Bank.

We
overrule Tara=s fourth issue.

IV.  Conclusion

We
conclude that the trial court had jurisdiction over appellants= claims disputing imposition of fees
under the Water Code.  Accordingly, we reverse that part of the trial court=s order that dismissed appellants= claims disputing imposition of fees
under the Water Code and remand for further proceedings consistent with our
opinion.  

We further conclude that the averments and allegations
in appellants=  Third Amended Petition are insufficient to support
the trial court=s jurisdiction over appellants= claims for reimbursement of previously paid fees and
Tara=s claims pertaining to breach of a purported
settlement agreement.  Accordingly, we affirm that part of the trial court=s order dismissing appellants= claims for reimbursement of previously paid fees and
Tara=s claim that the City breached a purported settlement
agreement.            

 

 

 

/s/        Charles Seymore

Justice

 

Panel consists of Justices Frost,
Seymore, and Guzman (Frost, J., concurring).









[1]  We refer to the ordinance at issue as the A2004 Ordinance.@ 
The definition of Acommercial residential user@ was amended in 2005 to exclude hotels and motels.





[2]  Section 13.043(b) provides in relevant part:  ARatepayers of the following entities may appeal the
decision of the governing body of the entity affecting their water, drainage,
or sewer rates to the commission: . . . a municipally owned utility, if the
ratepayers reside outside the corporate limits of the municipality.@  Tex. Water Code Ann.
' 13.043(b) (Vernon 2008). 





[3]  See Tex. Civ. Prac. & Rem. Code Ann. ''
37.002, .009 (Vernon 2008).  In addition to Tara=s requesting a declaration the handwritten resolution was enforceable,
appellants sought a declaration that:

 

(a) . . . the [2004] Ordinance is an unlawful ad
valorem tax in violation of the Texas Constitution;

(b) . . . the [2004] Ordinance is a discriminatory
utility rate under Texas law;

(c) . . . any presumption that the [2004] Ordinance is
valid disappeared because the City acted arbitrarily rather than on the basis
of changed conditions when passing the [2004] Ordinance;

(d) . . . no conclusive or issuable fact or condition
existed which would have authorized the City=s
passage of the [2004] Ordinance;

(e) . . . the City must have introduced substantive
evidence and exercised legislative judgment on the basis of that substantive
evidence before it in order to validly pass the [2004] Ordinance;

(f) . . . the City did not introduce substantive
evidence or exercise legislative judgment on any basis of substantive evidence
before it when passing the [2004] Ordinance;

(g) the action of the City Council in passing the
[2004] Ordinance was arbitrary because it was based on absolutely no
investigation of the facts and certainly no investigation of the facts with
regard to the City=s expenses in providing water and sewer services or as
to what rates would enable the City to realize a reasonable return on its
investment;

(h) the City=s
final water and sewer rates under the [2004] Ordinance must, but do not, relate
to the actual cost (including only direct and indirect costs) of providing the
charged‑for service, water and sewer service;

(i) the City=s Aactual costs@ of
providing the charged‑for serviceCwater
and sewer serviceCunder the [2004] Ordinance do not include expenses
related to other City departments, such as the police and fire departments, or
expenses related to City‑wide employee raises to the extent such
employees are not a part of the water and sewer service department;

. . . .

(k) . . . the [2004] Ordinance is arbitrary,
capricious, and/or unreasonable, and therefore, void ab initio;

(l) . . . [appellants] are entitled to, and the City
shall pay, a reimbursement of water and sewer service fees from the City to
[appellants], such amount being the difference between the amount charged to
[appellants] under the [2004] Ordinance from December 1, 2004 until the date of
the final judgment;

(m) . . . this Court declare that [appellants] only have
to pay water and sewer rates under the Prior Ordinance until further order from
the Court or until such time that the [2004] Ordinance is lawfully amended in
accordance with Texas law and other applicable law; and

(n) . . . [appellants] are entitled to an award of
attorneys= fees pursuant to Texas Civil Practice & Remedies
Code ' 37.009.

 

In their prayer for damages, appellants
limited damages to reimbursement for surcharges.  In another section of their
petition, however, they referred to having Aadditionally
suffered revenue losses, reductions in property values, and the loss of current
and potential tenants, among other damages.@





[4]  See Tex. Water Code Ann. ''
13.042, .043 (Vernon 2008).





[5]  See Tex. Loc. Gov=t Code Ann.
'' 271.151(2), .152 (Vernon 2005).





[6]  Specifically, appellants argue that (1) under the
Texas Water Code, TCEQ does not have jurisdiction to review inside-city
ratepayers= claims; (2) TCEQ does not have exclusive jurisdiction
to review appellants= common law, breach of contract, and declaratory
judgment claims; (3) appellants have the right to recover unlawful water and
sewer fees and attorney=s fees if the ordinance is declared void ab initio;
and (4) the trial court has jurisdiction to enforce the settlement agreement
signed by Tara=s counsel and counsel for the City.





[7]  If a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties when necessary to resolve the jurisdictional issues raised.  Tex. Dep=t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 227 (Tex.
2004).  If the evidence creates a fact question regarding the jurisdictional
issue, then the plea to the jurisdiction must be denied.  Id. at 227B28.  If the evidence is undisputed or fails to raise a
fact question on the jurisdictional issue, then the trial court rules on the
plea to the jurisdiction as a matter of law.  Id. at 228.  As our
concurring colleague observes, however, the City, in its plea to the
jurisdiction, challenged appellants=
pleadings.





[8]  The Code Construction Act applies to construction of
the Water Code.  See Tex. Water Code Ann. ' 1.002(a) (Vernon 2008).





[9]  The City of Sherman and City of Austin
courts were construing the Public Utilities Regulatory Act of 1975.  See
City of Sherman v. Pub. Util. Comm=n, 643 S.W.2d 681, 683 (Tex.
1983); Pub. Util. Comm=n v. City of Austin, 728
S.W.2d 907, 912B13 (Tex. App.CAustin
1987, writ ref=d n.r.e.).  The Water Code provisions at issue in the
present case retain much of the language of that act.  See Act of June
2, 1975, 64th Leg. R.S., ch. 721, ''
17, 20, 26, 1975 Tex. Gen. Laws 2327, 2334B37. 
Compare Tex. Water Code '' 13.042(a)B(e),
.042(f), .043, respectively.





[10]  The City also cites City of Willow Park v. Squaw
Creek Downs, L.P., 166 S.W.3d 336, 340 (Tex. App.CFort Worth 2005, no pet.).  The Squaw Creek Downs
court held the trial court had jurisdiction over a presuit discovery petition
and affirmed the trial court=s order denying
the city=s plea to the jurisdiction.  Id. at 338.  In
passing, the court observed, A[T]he water
code confers exclusive original jurisdiction over water service disputes to the
municipality and exclusive appellate jurisdiction over such disputes to the
Commission.@  Id. at 340 (citing Galveston v. Flagship
Hotel, Ltd., 73 S.W.3d 422, 427 (Tex. App.CHouston [1st Dist] 2002, no pet.)).





[11]  The City had apparently conceded the commission=s appellate jurisdiction.  See City of Galveston
v. Flagship Hotel, Ltd., 73 S.W.3d 422, 427 (Tex. App.CHouston [1st Dist.] 2002, no pet.).





[12]  In 2001, the Texas Natural Resources Commission
(TNRCC) was renamed the Texas Commission on Environmental Quality.  Act of May
28, 2001, 77th Leg., R.S., ch. 965, '
18.01, 2001 Tex. Gen. Laws 1933, 1985.





[13]  In its plea to the jurisdiction, the City invoked
governmental immunity only insofar as appellants were seeking monetary damages
and Tara was seeking breach of contract damages related to the purported
settlement agreement.  To defeat appellants=
other claims, the City relied on its assertion that the Water Code vested
exclusive jurisdiction in the TCEQ.





[14]  Often, courts use the terms Asovereign immunity@ and Agovernmental immunity@ interchangeably.  Wichita Falls State Hosp. v.
Taylor, 106 S.W.3d 692, 694 n.3 (Tex.
2003).  They are, however, two distinct concepts.  Id.  ASovereign immunity@
refers to a State=s immunity from suit and liability.  Id.  Its
protection extends not only to the State, but also to the varying divisions of
state government, including agencies, boards, hospitals, and universities.  Id.
AGovernmental immunity@ protects political subdivisions of the State, including counties,
cities, and school districts.  Id.





[15]  They also contend they should be allowed to recover
under the Water Code requirement that rates be just and reasonable and it would
be against public policy to allow the City a windfall.  In support of the first
contention, they rely solely on Texas Natural Resources Conservation
Commission v. Lakeshore Utility Co., 164 S.W.3d 368, 377B79 (Tex. 2005).  Lakeshore Utility was an
enforcement action brought by TCEQ=s
predecessor against a non-municipally owned utility, and the court did not
address the issue of governmental immunity.  See id. at 369B70 & 370 n.2.  In support of the second
contention, appellants rely solely on City of Port Isabel v. Pinnell,
207 S.W.3d 394, 398, 406B07 (Tex. App.CCorpus
Christi 2006, no pet.).  Pinnell involved a declaratory judgment and
injunctive relief.  See id. at 398.  The appellate court affirmed the
trial court=s judgment that certain city ordinances were void.  Id.
at 398, 406B08.   Although the trial court awarded attorneys= fees, Pinnell did not involve an award of
monetary damages resulting from enactment of the void ordinances, and 
governmental immunity was not an issue.  See id. at 401.  Lakeshore
and Pinnell do not support the trial court=s jurisdiction over an action for monetary damages against the City.





[16]  We note that the City does not dispute the form or
substance of the trial court=s order
granting its jurisdictional plea without prejudice.  Accordingly, we
confine our disposition to the judgment rendered. See Tex. R. App. P. 25.1(c) (stating, except for just
cause, appellate court may not grant party who does not file notice of appeal
more favorable relief than the trial court).





[17]  The City further responds that the doctrine of
promissory estoppel generally does not apply to a governmental unit exercising
its public or governmental functions.  See City of Hutchins v. Prasifka,
450 S.W.2d 829, 835 (Tex. 1970).





[18]  Tara also directs our attention to Catalina
Development, Inc. v. County of El Paso, 121 S.W.3d 704 (Tex. 2003).  In Catalina
Development, the supreme court held the county, by its conduct, had not
waived immunity from suit.  Id. at 704.





[19]  Tara contends, for the first time on appeal, that it
was Alured into entering into this agreement by the false
promises of the City attorney and its litigation counsel.@  In the trial court, Tara argued only that counsel
for both sides had signed the document and a fact question existed regarding
whether there was any order or resolution granting the City=s attorneys general or specific authority to bind the
City.  Tara then conceded it still had time to conduct discovery on that issue
and informed the court Aif we discover through the discovery process pursuant
to a continuance that there really is no evidence on the issues that we needed
some discovery on, then we=ll rest on the
arguments that we have made today as well as the evidence.@