Affirmed in Part, Reversed and Remanded in Part, and Opinion filed
October 28, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00176-CV

___________________

 

GATESCO Q.M., LTD. D/B/A QUAIL MEADOWS
APARTMENTS, Appellant

 

V.

 

THE CITY OF HOUSTON AND BILL WHITE,
INDIVIDUALLY, Appellees



 



 

On
Appeal from the 133rd District Court

Harris County,
Texas



Trial Court Cause No. 2007-00576

 



 

 

OPINION

The primary issue in this appeal is the proper construction
of section 13.042 of the Texas Water Code, a provision that has been construed
in conflicting ways by various Texas courts of appeals.  In the case under
review a consumer, the owner of an apartment complex, sought declaratory and
injunctive relief against a municipality that provided water service to the
complex.  The trial court dismissed the consumer’s claims for lack of
subject-matter jurisdiction.  Our dual charge on appeal is to determine whether
section 13.042 deprived the trial court of subject-matter jurisdiction over
these claims and whether the consumer sufficiently pleaded waivers of
governmental immunity as to the relief it sought.  We affirm in part and
reverse and remand in part.

Factual and Procedural
Background

 

         
Appellant/plaintiff Gatesco Q.M., Ltd. d/b/a Quail Meadows Apartments
(hereinafter “Gatesco”) owns the Quail Meadows Apartments (hereinafter the
“Apartments”) in Houston, Texas.  Appellee/defendant The City of Houston
(hereinafter the “City”) provides the Apartments with water service.  In
the trial court below, Gatesco sued the City and the City’s mayor,
appellee/defendant Bill White, in his individual capacity.  In its Fifth
Amended Petition, Gatesco made the following factual allegations:

·        Gatesco
has been paying its water bill to the City in a timely manner for years. 

 

·        Nevertheless,
the City assessed a $1,020.03 late fee for a payment which, according to the
City was “hours late.”[1] 
The lateness of this payment did not cause the City to take any action other
than to assess the late fee.[2] 
The City made no collection effort, mailed no notice to Gatesco, hung no notice
on Gatesco’s door, and made no effort to disconnect Gatesco’s water service
based on this late payment.  

 

·        This
late fee bears no relationship to any costs incurred by the City and is merely
a means of raising revenue to support the City government.  The purpose of
this late fee is to support the City’s water and sewer systems, and this fee is
not an estimate of any cost incurred by the City.  This late fee is a tax
that was not properly authorized by statute, in violation of the Texas
Constitution.

 

·       Gatesco
pursued its administrative remedies regarding the late fee, and the hearing
officer held an administrative hearing on December 18, 2006.  The hearing
officer, an employee of the City, upheld the late fee, and Gatesco had no
further administrative remedies.

 

·        Gatesco
filed this suit on January 23, 2007, and on that same date, Gatesco obtained a
temporary restraining order, preventing the City from shutting off the water
supply to the Apartments (hereinafter the “TRO”).  On February 6, 2007,
the TRO expired by operation of law.

 

·        Following
a hearing, on February 5, 2007, the trial court signed an order denying
Gatesco’s application for a temporary injunction but did not dissolve the TRO.
Although it was understood at the hearing that Gatesco would pay the late fee
that day, the City, in violation of the TRO which had not yet expired, rushed
to shut-off the water to the Apartments despite Gatesco having paid the late
fee in full at 12:47 p.m. on February 5, 2007, the day before the TRO expired.[3]

 

·        Although
Gatesco had enjoyed water service with the City for over eleven years, the City
demanded a security deposit in excess of $35,000.  Never in the preceding
eleven years had the City required any deposit from Gatesco.  The City’s
excuse for requiring the deposit was that the City had shut-off the water
supply to the Apartments.  This conduct is vindictive, retaliatory,
arbitrary, and capricious.

 

·        Gatesco
pursued its administrative remedies regarding this allegedly illegal
requirement of a security deposit, and the hearing officer held an
administrative hearing on April 10, 2007.  The hearing officer, an employee of
the City, upheld the requirement of a security deposit in excess of $35,000,
and Gatesco had no further administrative remedies.

 

         
After Gatesco exhausted its administrative remedies regarding the security
deposit, Gatesco amended its petition to complain of both the late fee and the
security deposit.  In its live petition, Gatesco asserts various
complaints regarding the late fee and the security deposit and seeks
declaratory and equitable relief.  The parties agreed to a second
temporary restraining order.  The City filed a plea to the jurisdiction
based primarily on governmental immunity, and Gatesco filed a response in
opposition.  Without ruling on the City’s plea, the trial court conducted
a bench trial on the merits on May 25, 2007, and took the case under
advisement.  The following week, on June 1, 2007, instead of ruling on the
merits, the trial court signed an order granting the City’s plea to the
jurisdiction.  This order was interlocutory because it did not dispose of
Gatesco’s claims against White, individually.  More than a year later, on
December 2, 2008, the trial court signed a final judgment, in which it
incorporated its order sustaining the City’s plea to the jurisdiction and
rendered a take-nothing judgment on the merits as to Gatesco’s claims against
White.  Although Gatesco has not assigned error or presented appellate
argument challenging the trial court’s judgment as to the claims against White,
in this appeal Gatesco has asserted in a single issue that the trial court erred
in sustaining the City’s plea to the jurisdiction.  

II.  Standard of Review 

We review de novo a trial court=s ruling on a plea to the
jurisdiction.  Tex. Dep=t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  When a party has filed a plea to the jurisdiction challenging the
pleadings, a reviewing court must construe the pleadings liberally in favor of
the pleader and look to the pleader=s intent.  See id. 
If the facts alleged affirmatively demonstrate the trial court=s jurisdiction to hear the cause, the
plea to the jurisdiction must be denied.  See id.  If
the pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court=s jurisdiction, but do not affirmatively demonstrate incurable defects in
the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs
should be afforded the opportunity to amend.  See id.  If the
pleadings affirmatively negate the existence of jurisdiction, then a plea to
the jurisdiction may be granted without allowing an opportunity to amend.[4]  See id. at 227. 
In ruling on a plea to the jurisdiction, a court does not consider the merits
of the parties’ claims.  See id. at 226B28; County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).  

III. 
Analysis 

A.    Which petition is the consumer’s live pleading?

         
When the trial court granted the City’s plea to the jurisdiction, the last
pleading that Gatesco had filed was its Fifth Amended Petition.  The City
urges this court not consider this pleading, arguing that Gatesco filed it late
and without obtaining leave of court.  Gatesco filed a motion for leave to
file this pleading, and the City filed a motion to strike the pleading. 
The trial court did not rule on either motion.  Under Goswami, this
court presumes that the trial court granted leave to file the untimely Fifth
Amended Petition and that the trial court considered this pleading because (1)
the record is silent of any basis to conclude that the trial court did not
consider this pleading; and (2) the City has not shown surprise or prejudice. See
Goswami v. Metropolitan Sav. & Loan Ass’n, 751 S.W.2d 487, 490 (Tex.
1988); Thomas v. Allstate Ins. Co., No. 14-05-00293-CV, 2006 WL 2290840,
at *2 n.3 (Tex. App.—Houston [14th Dist.] Aug. 10, 2006, no pet.) (mem. op.). 

         
The City also asserts that Gatesco filed this pleading on May 22, 2007, during
trial.  But, in its final judgment, the trial court states that the case
was called to trial on May 25, 2007, and that a bench trial was held on that
date.  The reporter’s record reflects that the parties presented their
opening statements, evidence, and closing arguments on May 25, 2007. 
Giving effect to the unambiguous language of the judgment, we conclude that
this case was called to trial and tried on May 25, 2007.  Therefore, the
Fifth Amended Petition was filed before trial.[5]

B.     
Do subsections (a) and (d) of section 13.042 of the Texas Water Code deprive Texas courts of subject-matter jurisdiction over the consumer’s claims?

 

         
The City asserts that section 13.042(a) of the Texas Water Code deprives the
trial court of subject-matter jurisdiction over this case and gives the City
exclusive original jurisdiction.  The City also asserts that section
13.042(d) of the Texas Water Code deprives this court of appellate jurisdiction
over this case and gives exclusive appellate jurisdiction to the Texas
Commission on Environmental Quality (hereinafter the “Commission.”).[6]  Section 13.042 of the Texas
Water Code provides as follows:

(a) Subject to the limitations imposed in this chapter
and for the purpose of regulating rates and services so that those rates may be
fair, just, and reasonable and the services adequate and efficient, the
governing body of each municipality has exclusive original jurisdiction over
all water and sewer utility rates, operations, and services provided by a water
and sewer utility within its corporate limits.

 

(b) The governing body of a municipality by ordinance
may elect to have the commission exercise exclusive original jurisdiction over
the utility rates, operation, and services of utilities, within the
incorporated limits of the municipality.

 

(c) The governing body of a municipality that
surrenders its jurisdiction to the commission may reinstate its jurisdiction by
ordinance at any time after the second anniversary of the date on which the
municipality surrendered its jurisdiction to the commission, except that the
municipality may not reinstate its jurisdiction during the pendency of a rate
proceeding before the commission.  The municipality may not surrender its
jurisdiction again until the second anniversary of the date on which the
municipality reinstates jurisdiction.

 

(d) The commission shall have exclusive appellate
jurisdiction to review orders or ordinances of those municipalities as provided
in this chapter.

 

(e) The commission shall have exclusive original
jurisdiction over water and sewer utility rates, operations, and services not
within the incorporated limits of a municipality exercising exclusive original
jurisdiction over those rates, operations, and services as provided in this
chapter.

 

(f) This subchapter does not give the commission power
or jurisdiction to regulate or supervise the rates or service of a utility
owned and operated by a municipality, directly or through a municipally owned
corporation, within its corporate limits or to affect or limit the power,
jurisdiction, or duties of a municipality that regulates land and supervises
water and sewer utilities within its corporate limits, except as provided by
this code.

 

Tex. Water Code Ann. § 13.042 (West 2008).  We review the trial court’s construction of
applicable statutes de novo.  See Johnson v. City of Fort Worth, 774
S.W.2d 653, 655B56 (Tex. 1989).  In construing a statute, our objective
is to determine and give effect to the Legislature’s intent.  See Nat’l
Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000). 
If possible, we must ascertain that intent from the language the Legislature
used in the statute and not look to extraneous matters for an intent the
statute does not state.  Id.  If the meaning of the statutory
language is unambiguous, we adopt the construction supported by the plain
meaning of the provision’s words.  St. Luke’s Episcopal Hosp. v. Agbor,
952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or strained
construction; instead, we must yield to the plain sense of the words the
Legislature chose.  See id.

1.     Section 13.042(a)

         
The City argues that section 13.042(a) applies because this case involves
“services provided by a water and sewer utility within [the City’s] corporate
limits.” Tex. Water Code Ann. §
13.042(a) (stating that “the governing body of each municipality has exclusive
original jurisdiction over all water and sewer utility rates, operations, and
services provided by a water and sewer utility within its corporate
limits.”).  We presume that this case involves “services” under this
statute.  See Tex. Water
Code Ann. § 13.002(21) (West 2008) (defining “service” as used in
section 13.042(a)).  We also presume that these services were provided
within the City’s corporate limits.  But, under the unambiguous language
of the statute, the City is excluded from the definition of a “water and sewer
utility,” as used in section 13.042(a).  See Tex. Water Code Ann. § 13.002(23)
(defining “water and sewer utility” as used in section 13.042(a) and excluding
from this definition “a municipal corporation . . . or a political subdivision
of the state, except an affected county”); City of Carrollton v. Tex. Comm’n
on Envtl. Quality, 170 S.W.3d 204, 210–11 (Tex. App.—Austin 2005, no pet.)
(holding that municipalities are expressly excluded from the definition of a
“water and sewer utility” as used in section 13.042(a)).  Under section
13.042(a), the Texas Legislature gives exclusive original jurisdiction to the
governing body of each municipality over the rates, operations, and services of
a private water and sewer utility (or a public entity not excluded from the
definition of “water and sewer utility”) operating within the corporate limits
of that municipality.  See Tex.
Water Code Ann. § 13.042(a); City of Carrollton, 170 S.W.3d at
210–11. 

         
The Supreme Court of Texas has not addressed this statutory-construction
issue.  In a recent case, this court indicated that, in section 13.042,
the Legislature did not confer exclusive original jurisdiction on a
municipality.  See Tara Partners, Ltd. v. City of S. Houston, 282
S.W.3d 564, 571–75 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  If
the Tara Partners precedent is on point, then we would reject the City’s
argument based on that precedent.  But, the City asserts that the Tara
Partners case is not on point because it involved rate disputes between a
municipally owned utility and its ratepayers rather than complaints by a water
customer regarding late fees and a security deposit imposed by a
municipality.  See id. at 571.  We presume for the sake of
argument that the Tara Partners case is not on point, and
research has not revealed any other case from this court that is on point.

         
Opinions from three sister courts of appeals support the City’s argument. 
See City of Donna v. Victoria Palms Resort, Inc., No. 13-03-375-CV, 2005
WL 1831593, at *3–4 (Tex. App.—Corpus Christi Aug. 4, 2005, pet. denied) (mem.
op.) (holding that section 13.042(a) applied to dispute regarding water charges
between municipality and water customer within corporate limits of
municipality); Flagship Hotel, Ltd. v. City of Galveston, 117
S.W.3d 552, 562–63 (Tex. App.—Texarkana 2003, pet. denied) (agreeing that
section 13.042(a) applied to dispute regarding water charges between
municipality and water customer within corporate limits of municipality); City
of Galveston v. Flagship Hotel, Ltd., 73 S.W.3d 422, 426–27 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (same as City of Donna). 
But we choose not to follow these opinions.  

In none of these opinions do the courts mention or discuss the statutory
definition of a “water and sewer utility,” under which municipalities are
expressly excluded.  See Tex.
Water Code Ann. § 13.002(23); City of Donna, 2005 WL 1831593, at
*3–4; Flagship Hotel, Ltd., 117 S.W.3d at 562–63; Flagship Hotel, Ltd.,
73 S.W.3d at 426–27.  Giving effect to the unambiguous language of the
statutory definition and of section 13.042(a), we conclude that section
13.042(a) does not apply in the case under review and therefore does not
deprive the trial court of subject-matter jurisdiction.  See St. Luke’s
Episcopal Hosp., 952 S.W.2d at 505; City of Carrollton, 170 S.W.3d
at 210–11.  But see City of Donna, 2005 WL 1831593, at *3–4; Flagship
Hotel, Ltd., 117 S.W.3d at 562–63; Flagship Hotel, Ltd., 73 S.W.3d
at 426–27.  Accordingly, section 13.042(a) is not a basis for concluding
that the trial court lacks subject-matter jurisdiction in this case.

2.     Section 13.042(d)

         
The City also
asserts that section 13.042(d) of the Texas Water Code deprives this court of
appellate jurisdiction over this case and gives exclusive appellate
jurisdiction to the Commission.  Under section
13.042(d), the Commission has “exclusive appellate jurisdiction to
review orders or ordinances of those municipalities as provided in this
chapter.”  Tex. Water Code Ann.
§ 13.042(d) (emphasis added).  Under this section’s
unambiguous language, the Legislature did not confer any appellate jurisdiction
on the Commission in this section; rather, the Legislature introduced the
concept of appellate jurisdiction and referred to other parts of Chapter 13 of
the Texas Water Code, in which the Legislature confers appellate jurisdiction
on the Commission, for example, section 13.043. See Tex. Water Code Ann. § 13.043 (West
2008).  But, no provision of Chapter 13 gives the Commission appellate
jurisdiction over administrative proceedings relating to water services
provided by a municipality to one of its customers within the municipality’s
corporate limits.  See, e.g., Tex.
Water Code Ann. § 13.043(a) (giving parties to a rate proceeding before
the governing body of a municipality the ability to
appeal the decision of the governing body to the commission but stating that
this subsection does not apply to a municipally owned utility).

         
The Supreme Court of Texas has yet to consider this issue of statutory
construction, but our court has held that, in section 13.042(d), the
Legislature did not confer exclusive appellate jurisdiction on the
Commission.  See Tara Partners, 282 S.W.3d at 571–75.  The
City argues that the Tara Partners case is not on point because it
involved rate disputes rather than complaints by a water customer regarding
late fees and a security deposit imposed by a municipality.  See id.
at 571.  Again, we presume for the sake of argument that the Tara
Partners case is not on point, and, again, we note that research has not
revealed any on-point case from this court.  And, again, we recognize that the
same opinions from the same three sister courts of appeals support the City’s
argument.  See City of Donna, 2005 WL 1831593, at *3–4; Flagship
Hotel, Ltd., 117 S.W.3d at 562–63; Flagship Hotel, Ltd., 73 S.W.3d
at 426–27.  But, again, we choose not to follow these opinions.  

In none of these cases do our sister courts explain how the language of
section 13.042(d) itself gives the Commission appellate jurisdiction over the
matters under review in the respective cases, nor do the courts in these cases
point to language in other parts of Chapter 13 of the Texas Water Code that
gives the Commission such jurisdiction.  See City of Donna, 2005 WL
1831593, at *3–4; Flagship Hotel, Ltd., 117 S.W.3d at 562–63; Flagship
Hotel, Ltd., 73 S.W.3d at 426–27.  Giving effect to the unambiguous
language of the statute, we conclude that section 13.042(d) does not give the
Commission appellate jurisdiction in the case under review. See St.
Luke=s Episcopal Hosp., 952 S.W.2d at 505; City of Galveston v. Flagship Hotel,
Ltd., No. 03-10-00094-CV, —S.W.3d—,—, 2010 WL 3370949, at *2 (Tex. App.—Austin Aug. 27, 2010, no pet. h.) (noting that, in the Flagship
litigation, after two courts of appeals held that the predecessor to the
Commission had exclusive appellate jurisdiction under section 13.042(d), the
Commission ruled that it does not have jurisdiction to regulate or supervise
the service of a municipal utility operating within its corporate limits).  But
see City of Donna, 2005 WL 1831593, at *3–4; Flagship Hotel, Ltd.,
117 S.W.3d at 562–63; Flagship Hotel, Ltd., 73 S.W.3d at 426–27.  Accordingly,
section 13.042(d) is not a basis for concluding that the trial court lacks
subject-matter jurisdiction in this case.

C.     
Has the consumer sufficiently pleaded a waiver of governmental immunity as to
its claims against the municipality?

 

         
1.       Governmental Immunity and Declaratory
and Equitable Relief

When a political subdivision of the State is immune from suit
under the doctrine of governmental immunity, courts lack subject-matter
jurisdiction over the suit.[7]  Tex. Dep’t of Transp. v.
Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Generally, for there to be a
waiver of immunity from suit, the Legislature must have waived immunity from
suit as to the claim in question by clear and unambiguous language.  See
Tex. Gov=t Code Ann. § 311.034 (West Supp. 2007) (providing that a statute
shall not be construed as a waiver of sovereign immunity unless the waiver is
effected by clear and unambiguous language); Tooke v. City of Mexia, 197
S.W.3d 325, 332B33 (Tex. 2006). 

In its live pleading, Gatesco does not seek money damages
against the City; rather, in various claims Gatesco seeks declaratory and
injunctive relief.  The Texas Declaratory Judgments Act contains a waiver
of immunity from suit.  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008); City of El
Paso v. Heinrich, 284 S.W.3d 366, 373 n.6 (Tex. 2009).  But, this
waiver is a limited one, and determining whether a particular request for
declaratory relief falls within this waiver of immunity is a complicated matter
under current law.  Therefore, we begin by examining the law in this
context. 

If a party joins a governmental entity and seeks a
declaration that an ordinance or statute is invalid, based on either
constitutional or nonconstitutional grounds, immunity from suit is waived. 
See City of Elsa v. M.A.L., 226 S.W.3d 390, 391–92 (Tex. 2007); Heinrich,
284 S.W.3d at 373 n.6; Lakey v. Taylor ex rel. Shearer, 278 S.W.3d 6, 15
(Tex. App.—Austin 2008, no pet.); see also City of Beaumont v. Bouillion,
896 S.W.2d 143, 148–49 (Tex. 1995).  Likewise, if a party joins a governmental
entity and seeks a declaration construing an ordinance or statute, immunity
from suit is waived.  See Tex. Lottery Comm’n v. First State Bank of
DeQueen, No. 08-0523, —S.W.3d—,—, 2010 WL 3818297, at *3–4 (Tex. Oct. 1,
2010) (noting that governmental entities are to be joined in suits to construe
their legislative pronouncements and that immunity from suits is waived in such
suits); Heinrich, 284 S.W.3d at 373 n.6 (citing Leeper regarding
waiver of immunity as to declaratory-judgment suits to construe legislation); Tex.
Educ. Agency v. Leeper, 893 S.W.2d 432, 445–46 (Tex. 1994) (stating that
governmental entities are not immune from suits seeking a construction of their
legislative pronouncements).

          Governmental
immunity does not preclude prospective equitable remedies in official-capacity
suits against government actors who allegedly have violated statutory or
constitutional provisions, by acting without legal authority or by failing to
perform a purely ministerial act.  See Heinrich, 284 S.W.3d at
372–73.  Nonetheless, in these ultra vires actions, immunity from suit
is not waived as to the governmental entities themselves, even though a suit
against a government actor in his official capacity is, for all practical
purposes, a suit against the governmental entity.  See id.

Governmental immunity generally bars suits for retrospective
monetary relief, and private parties cannot circumvent a governmental
entity’s immunity from suit by characterizing a suit for money damages as a
declaratory-judgment claim.  See Heinrich, 284 S.W.3d at 368–69,
371.  Therefore, if a litigant joins a governmental entity and seeks an
otherwise proper declaratory judgment construing or invalidating a statute,
this claim is nonetheless barred by governmental immunity if the declaration
sought would have the effect of establishing a right to relief against the
governmental entity for which governmental immunity has not been waived.  See
id. at 372; City of Houston v. Williams, 216 S.W.3d 827, 828–29 (Tex. 2007); State v. BP Am. Prod. Co., 290 S.W.3d 345, 360 (Tex. App.—Austin 2009,
pet. filed).  

2.       The Consumer’s
Allegations

          In its live petition, Gatesco makes
the following allegations:

·       In violation of the TRO and in an “arbitrary,
capricious, retaliatory, and vindictive manner” the City shut off Gatesco’s
water service even though Gatesco had paid the outstanding late fee, thus
violating the Due Process Clause of the Fourteenth Amendment to the United States
Constitution (hereinafter “Due Process Clause”) or the Due Course of Law Clause
of the Texas Constitution (hereinafter “Due Course of Law Clause”). The City
shut off Gatesco’s water service to provide a basis for requiring Gatesco to
pay a security deposit of more than $35,000 in retaliation for Gatesco’s
challenge to the late fee.  

 

·       Section 47-69 of the City’s Code of Ordinances,
authorizing 10% late fees is excessive and constitutes a tax, in violation of
article XI, section 5 of the Texas Constitution (stating
that cities with a population greater than 5,000 may levy, assess, and collect
taxes as may be authorized by law or by their charters) and article I,
section 13 of the Texas Constitution (stating that excessive
fines shall not be imposed).

 

·       
By various actions at the second
administrative hearing, the City violated Gatesco’s rights under Due Process
Clause and the Due Course of Law Clause.

 

·       
The City’s charges for services must be
in amounts reasonably necessary for the services and cannot be a general means
for raising revenue for the City. Because the late fee charged to Gatesco bears
no relationship to any cost incurred by the City and because this fee is used
to support the water and sewer systems, this fee is a tax.  The City has no
authority to levy this tax, and this tax violates article XI, section 5 and
article I, section 13 of the Texas Constitution.

 

·       
The law allowing the City to charge 10%
late fees and the implementation of that law by the City violates due process
and equal protection guarantees under the Texas and United States
Constitutions, is an excessive fine, an unlawful tax, and an unreasonable use
of police power.

 

         
3.       Analysis of Governmental Immunity as
to the Consumer’s Requests for Relief

 

Based on the above allegations, Gatesco seeks various types of
declaratory and injunctive relief, which we now examine seriatim to determine
if immunity from suit has been waived.

 

Permanent
Injunction to Preclude Water Supply Shut Off

         
Gatesco seeks a permanent injunction precluding the City from ever shutting off
the water supply to the Apartments.  Gatesco does not tie this request to
any alleged constitutional violation, the alleged invalidity of any statute, or
to the construction of any statute.  This request is not covered by the
waiver of immunity in the Declaratory Judgments Act or by the waiver of
immunity relating to constitutional violations.  See Tex.
Lottery Comm’n, 2010 WL 3818297, at *3–4; City of Elsa, 226 S.W.3d
at 391–92; Multi-County Water Supply Corp. v. City of Hamilton, No.
14-09-00333-CV, —S.W.3d—,—, 2010 WL 3409590, at *2–3 (Tex. App.—Houston [14th
Dist.] Aug. 31, 2010, no pet. h.).  Accordingly, we conclude that this request
for a permanent injunction is barred by governmental immunity.

Requests for Certain Declarations Relating to Security
Deposit

Gatesco also seeks the following declaratory relief: (1) a
declaration that no basis exists to require Gatesco to post a security deposit
and (2) a declaration that requiring Gatesco to post a security deposit under
these circumstances violates Houston ordinances “requiring a recheck of
[Gatesco’s] credit stability” prior to requiring a security deposit. 
Gatesco does not base these requests on any alleged constitutional
violation.  In these requests Gatesco appears to allege statutory
violations regarding the requirement that Gatesco post a security
deposit.  But, Gatesco has not sued any government officials alleging
that they have acted without legal authority or failed to perform a purely
ministerial act.[8]  Furthermore, these
declarations would have the effect of establishing a right to relief against
the City for which governmental immunity has not been waived. We conclude that
these requests for declaratory relief are barred by governmental
immunity.  See Tex. Dep’t of Ins. v. Reconveyance Servs., Inc., 306
S.W.3d 256, 258–29 (Tex. 2010) (holding that trial court lacked subject-matter
jurisdiction over ultra vires action that was filed only against the
governmental entity); BP Am. Prod. Co., 290 S.W.3d at 360 (stating that
an otherwise proper declaratory-judgment claim is nonetheless barred by
governmental immunity if the declaration sought would have the effect of
establishing a right to relief against the governmental entity for which
governmental immunity has not been waived).

Requests for Certain Declarations Regarding Alleged
Constitutional Violations

Gatesco also seeks the following declaratory relief:

·       
a declaration that the law allowing the
City to charge a late fee in excess of $1,000 for a payment that is one day
late is an excessive fine and an unlawful tax

 

·       
a declaration that this law or the City’s
implementation of this law is unconstitutional and invalid in that it results
in an unauthorized tax, a declaration that the resulting fee is
unconstitutional, and an injunction from enforcing this tax

 

·       
a declaration that the late fee charged
to Gatesco bears no reasonable relationship to any costs incurred by the City, is
a general means of raising revenue, and is an illegal tax, and an excessive
fine that violates the Texas Constitution

 

            These
requests for declaratory and injunctive relief (hereinafter the “Constitutional
Declaration Requests”) are based on alleged constitutional violations.  We
conclude that Gatesco has sufficiently pleaded a waiver of governmental
immunity as to these requests for declaratory relief and that the trial court
erred to the extent it dismissed these claims based on governmental
immunity.  See City of Elsa, 226 S.W.3d at 391–92; Heinrich,
284 S.W.3d at 373 n.6; City of Beaumont, 896 S.W.2d at 148–49; Lakey,
278 S.W.3d at 15.  

Requests
Regarding Alleged Due Process and Equal Protection Violations

Gatesco also seeks the following declaratory relief based on alleged
violations of equal protection and due process:

·       
a declaration that the law allowing the
City to charge a late fee in excess of $1,000 for a payment that is one day
late violates constitutional due process and equal protection, and is an
unreasonable use of police power

 

·       
a declaration that the late fee charged
to Gatesco and the requirement that Gatesco post a $35,000 deposit are both an
unreasonable use of the police power and an injunction against enforcing either[9]

 

·       
a declaratory judgment that Gatesco’s due
process rights were violated at the April 10, 2007, administrative hearing and
that a new administrative hearing should be held to provide Gatesco with its
due process rights

 

         
These requests for declaratory and injunctive relief (hereinafter the “Due
Process Declaration Requests”) are also based on alleged constitutional
violations that provide a waiver of governmental immunity.  The City,
however, asserts that Gatesco has not sufficiently pleaded its entitlement to
this relief because Gatesco has not pleaded a property interest subject to
protection under the Fourteenth Amendment to the United States Constitution or
under the Due Course of Law Clause of the Texas Constitution.  See
Univ. of Tex. Med. Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995)
(noting that, to plead a valid claim based on Fourteenth Amendment or Due
Course of Law Clause, a person must allege a life, liberty, or property
interest protected by these constitutional provisions).  We agree that
Gatesco has not pleaded the existence of such a property interest.  

         
Nonetheless, Gatesco’s petition does not affirmatively demonstrate an incurable
defect in this regard.  See, e.g., Hidden Oaks Ltd. v. City of
Austin, 138 F.3d 1036, 1046 (5th Cir. 1998) (holding that owner of
apartment complex in Texas had property interest in continuous utility service
triggering Fourteenth Amendment protections).  Furthermore, the City did
not assert this pleading defect in its plea to the jurisdiction.  In this
context, it is appropriate to give Gatesco an opportunity on remand to amend its
pleadings to allege a property interest subject to protection under the
Fourteenth Amendment to the United States Constitution or under the Due Course
of Law Clause of the Texas Constitution.  See Gatesco, Inc. v. City of
Rosenberg, 312 S.W.3d 140, 144–45 (Tex. App.—Houston [14th Dist.] 2010, no
pet.).  If in its amended pleading Gatesco does not sufficiently plead
such an interest, then these three requests will be barred by governmental
immunity and should be dismissed.  See id.

D.     
Is there any other basis for affirming the trial court’s ruling as to the
Constitutional Declaration Requests and the Due Process Declaration Requests?

 

         
In its plea to the jurisdiction, the City asserted that the trial court lacks
jurisdiction because Gatesco did not plead the necessary prerequisites for
enjoining enforcement of a penal statute.  The City did not assert this
argument in its appellate brief and stated at oral argument that it was
abandoning this argument.[10] 

         
In its plea, the City also asserted that governmental immunity bars any tort
claims pleaded by Gatesco against the City.  We conclude, however, that
Gatesco has not pleaded any tort claims against the City.  And the City
did not assert any other basis for a jurisdictional dismissal in its plea that
we have not addressed already.  

For the first time on appeal, the City asserts that Gatesco failed to
serve a copy of “the proceeding” on the Attorney General of the State of Texas,
as required by Section 37.006(b) of the Texas Civil Practice and Remedies Code. 
See Tex. Civ. Prac. & Rem. Code
§ 37.006(b) (West 2008).  There is nothing in our record reflecting that
such service has been effected.  In a prior precedent this court concluded that
such a failure is a jurisdictional defect, which would make it unnecessary to
preserve error in the trial court.  See Commissioners Court of Harris
County v. Peoples Nat’l Util. Co., 538 S.W.2d 228, 229 (Tex. Civ.
App.—Houston [14th Dist.] 1976, writ ref’d n.r.e.).  In subsequent cases,
however, the Supreme Court of Texas may have implicitly overruled this court’s Commissioners Court precedent.  See Dubai Petroleum Co. v. Kazi,
12 S.W.3d 71, 76–77 (Tex. 2000); City of Garland v. Louton, 691 S.W.2d
603, 605 (Tex. 1985) (per curiam).  But, even under the Commissioners
Court case, the remedy for the jurisdictional defect is a reversal of the
judgment and a remand to allow a reasonable time for the plaintiff to serve the
Attorney General as required.  We need not and do not decide whether the Commissioners
Court case is still good law because, in either event, we are reversing and
remanding as to Gatesco’s requests based on constitutional violations, and
Gatesco will have a reasonable time to serve the Attorney General.  If
Gatesco fails to serve the Attorney General within a reasonable time, then the
trial court should dismiss.

IV.
Conclusion

         
The trial court erred in dismissing the Constitutional Declaration Requests for
lack of subject-matter jurisdiction.  Accordingly, the trial court’s
dismissal of those requests is reversed and remanded. As to the Due Process
Declaration Requests, Gatesco is entitled to an opportunity to amend its
pleadings to allege a property interest subject to protection under the
Fourteenth Amendment to the United States Constitution or under the Due Course
of Law Clause of the Texas Constitution. Because we are remanding requests for
declaratory relief, we also reverse and remand as to Gatesco’s request for
costs and attorney’s fees under the Texas Declaratory Judgments Act.  On
remand, the trial court shall dismiss this suit if, after a reasonable time,
Gatesco has not served the Attorney General as required by section 37.006(b) of
the Texas Civil Practice and Remedies Code.  The remainder of the trial
court’s judgment is affirmed.

 

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices
Frost, Boyce, and Sullivan.

 

 









[1]
The evidence at trial showed that the payment in question was due on or before
November 27, 2006, and that Gatesco paid the amount due on November 28, 2006.  





[2]
On appeal, Gatesco has not disputed that this payment was late.





[3]
Evidence at trial showed that the City shut off water service to the Apartments
at 1:04 p.m. on February 5, 2007.





[4]
In its plea to the jurisdiction, the City did
not challenge the existence of jurisdictional facts using evidence; therefore,
the standard of review for that situation does not apply.  See Miranda,
133 S.W.3d at 227.  





[5] The reporter’s record reflects that on May 7, 2007,
the date set for a hearing on Gatesco’s second application for temporary
injunction, the trial court stated, “[I]t is my understanding that this is a temporary
injunction.  Are you ready to go directly to trial?”  After the
attorneys answered in the affirmative, the trial court stated that “we are now
going directly to trial on all matters.”  The trial court then recessed to
allow the parties to address various matters, including the filing by the City
of its plea to the jurisdiction, the filing by Gatesco of a response thereto,
and a hearing by the trial court on discovery motions.  Though the
judgment establishes that trial began on May 25, 2007, even if trial had begun
on May 7, 2007, we would conclude that the Goswami rule applies to
pleadings filed during trial.

 





[6]
Even though the City did not assert these arguments in the trial court, because
these arguments go to subject-matter jurisdiction, we must consider them. 
See Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 850–51 (Tex. 2000);
Tex. Dep’t of Transp. v. Olivares, 316 S.W.3d 89, 95 (Tex.
App.—Houston [14th Dist.] 2010, no pet.).





[7]
Often, courts use the terms “sovereign immunity” and “governmental immunity”
interchangeably; nevertheless, they are two distinct concepts.  Wichita
Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003).  “Sovereign
immunity” refers to a State’s immunity from suit and liability.  Id.  Its protection extends not only to the State, but also to the varying
divisions of state government, including agencies, boards, hospitals, and
universities.  “Governmental immunity” protects political subdivisions of
the State, including counties, cities, and school districts.  Id.





[8]
Gatesco did sue Bill White, the mayor of the
City.  But, Gatesco sued White in his individual rather than his official
capacity. See Heinrich, 284 S.W.3d at 372–73 (stating that ultra
vires claims should be asserted against government actors in their official
capacity). In its petition, Gatesco did not make any specific allegation
against White and did not allege that White acted without legal authority or
failed to perform a purely ministerial act.  See id.  The
trial court dismissed the claims against White on the merits following a bench
trial. The trial court did not dismiss the claims against White for lack of
subject-matter jurisdiction. On appeal, Gatesco has not assigned error or
presented appellate argument challenging the trial court’s judgment that
Gatesco take nothing against White.  





[9]
We construe this request as a request for
declaratory and injunctive relief based on the allegation that the City’s
imposition of the late fee and the security-deposit requirement violate
substantive due process.  See City of San Antonio v. TPLP Office Park
Props., 218 S.W.3d 60, 64–65 (Tex. 2007) (discussing requirement under
substantive due process that City’s exercise of the police power cannot be
arbitrary and unreasonable). If a party satisfies the heavy burden to show a
violation of substantive due process, then the remedy is to void the action
that violated substantive due process.  See Frazier v. Garrison I.S.D.,
980 F.2d 1514, 1528 (5th Cir. 1993) (stating that “substantive due process may
require courts to void certain types of government action”); Williamson v.
Guadalupe County Groundwater Conservation Dist., 343 F. Supp. 2d 580, 600
(W.D. Tex. 2004) (holding that plaintiff stated claim for substantive due
process).

 





[10]
Even if the City had not abandoned this argument, we still would conclude that
it lacks merit.